FILED

2012 Sep-25  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **AMANDA SANDY SPEEGLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-3247-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Amanda Sandy Speegle ("Ms. Speegle") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. Speegle timely pursued and exhausted her administrative

---

[1]   In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI under the Social Security Act. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

remedies available before the Commissioner.  The case is ripe for review pursuant to

42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Speegle was a 27-year-old female at the time of her hearing before the

administrative law judge (hereinafter "ALJ").  (Tr. 36, 38).  Ms. Speegle attended

high school through the ninth grade and subsequently obtained her GED.  (Tr. 177,

370).  Ms. Speegle's past work experience includes employment as a receptionist,

poultry dresser, school bus driver, psychiatric aide, admissions clerk, cashier checker,

restaurant worker, cleaner, steel inspector, home attendant, and shuttle bus driver.

(Tr. 62-64).

Ms. Speegle maintains that she became disabled on October 15, 2007.  (Tr. 21,

89, 90).  Ms. Speegle bases her disability claim on polycystic ovarian syndrome

("POS"), bipolar disorder, anxiety disorder, and obesity.  (Tr. 23-24, 89, 90).  Ms.

Speegle protectively applied for DIB and SSI on January 30, 2008.  (Tr. 89, 90).

Both claims were denied initially on July 15, 2008.  (Tr. 89, 90).

Ms. Speegle timely sought an administrative hearing, which request was

received on July 30, 2008.  (Tr. 21, 105).  A hearing before the ALJ was held on

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C.
§ 405(g) fully applicable to claims for SSI.

December 9, 2009.  (Tr. 21, 26).  Subsequent to this hearing, the ALJ concluded Ms. Speegle was not disabled as defined by the Act and denied her DIB and SSI applications on February 8, 2010.  (Tr. 21-29).

Ms. Speegle filed a request for review of the ALJ's opinion on March 22, 2010. (Tr. 16-17).  On July 15, 2011, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Ms. Speegle.  (Tr. 1).

On September 8, 2011, Ms. Speegle filed her complaint with this court disputing the Commissioner's decision.  (Doc. 1).  Ms. Speegle filed a brief (Doc. 9) in support of her appeal on January 30, 2012, and on March 2, 2012, the Commissioner followed with his responsive brief.  (Doc. 10).  Ms. Speegle elected not to file a reply.  This court has carefully considered the record, and, for the reasons that follow, remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 13, 2012.

"inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if

she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Speegle had not engaged in substantial gainful activity since the date of her disability, *i.e.*, October 15, 2007.  (Tr. 23 ¶ 2).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: polycystic ovarian syndrome (POS), bipolar disorder, and anxiety disorder." (Tr. 23 ¶ 3 (citations omitted)).[4]  Accordingly, the ALJ concluded that Ms. Speegle satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Speegle did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments

---

[4]  The ALJ also found that Ms. Speegle's obesity was not severe. (Tr. 24).  Ms. Speegle does not contest this finding on appeal.  (*See generally* Doc. 9).

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18 ¶ 4).  Ms. Speegle does not

challenge this determination on appeal.

The ALJ then evaluated Ms. Speegle's residual functional capacity ("RFC")

at step four, and the claimant was found to have the ability:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except she is limited to simple, routine, and repetitive tasks
> in an environment free of fast-paced production requirements and
> involving only simple work-related decisions as well as few, if any,
> workplace changes.

(Tr. 25 ¶ 5).[5]  Further, the ALJ accepted the testimony of the vocational expert that

at this RFC light level with certain non-exertional restrictions, the claimant was able

to perform her past relevant employment as a cashier, cleaner, or poultry dresser.  (Tr.

28; *id.* ¶ 6).

---

[5]  The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at
a time with frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when
it involves sitting most of the time with some pushing and pulling of arm
or leg controls.  To be considered capable of performing a full or wide
range of light work, you must have the ability to do substantially all of
these activities.  If someone can do light work, we determine that he or
she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods
of time.

20 C.F.R. § 404.1567(b), as current through September 13, 2012.

Because of the ALJ's finding that Ms. Speegle was able to perform past relevant work, it was unnecessary to continue to step five of the sequential analysis. Accordingly, the ALJ decided that Ms. Speegle was not disabled as defined by the Act, and denied her DIB and SSI claims. (Tr. 28-29; Tr. 28 ¶ 12).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis

added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

In this appeal, Ms. Speegle primarily contends that "[t]he ALJ's mental RFC findings are grossly and egregiously inconsistent with the record evidence including an opinion by SSA's own consultative psychologist."  (*See* Doc. 9 at 6).  The court turns to this issue and agrees with Ms. Speegle that, under the circumstances of her case, the ALJ committed reversible error.[7]

In support of her mental RFC determination, the ALJ afforded "great weight to the State agency mental assessment (Exhibits 16F and 18F) because it appears consistent with the record, but . . . assign[ed] little weight to the State agency physical medical assessment [completed at the same time], at Exhibit 17F, because it was based on an incomplete record."  (Tr. 28).

The court has studied Exhibits 16F (mental RFC assessment) and 18F (psychiatric review technique), which were prepared by Robert B. White, Ph.D. ("Dr. White") on June 10, 2008.  Based upon his paper review of Ms. Speegle's records, Dr. White opined:

---

[6]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7]  As a result, the court does not reach the merits of any other issues presented on appeal.

**CLAIMANT CAN UNDERSTAND, REMEMBER AND CARRY OUT SIMPLE INSTRUCTIONS, MAKE SIMPLE DECISIONS, ATTEND AND CONCENTRATE FOR EXTENDED PERIODS, INTERACT ADEQUATELY WITH CO-WORKERS AND SUPERVISORS & RESPOND APPROPRIATELY TO CHANGES IN ROUTINE WORK SETTING.**

(Tr. 351).

The ALJ accepted Dr. White's opinion over that which was provided by a state psychological examiner, Corinne Alvarez-Sanders, Ph.D. ("Dr. Alvarez-Sanders"), in May 2008.  From a functional standpoint, Dr. Alvarez-Sanders concluded that "[t]he prognosis is poor that Ms. Speegle will be able to maintain stable full time employment as her symptoms of depression and anxiety are severe even with medication." (Tr. 348).

Dr. Alvarez-Sanders also performed a Global Assessment of Functioning ("GAF") on Ms. Speegle and reported a score of 45, which indicates a "serious impairment in occupational and social functioning[.]"  (Tr. 348).  The ALJ rejected Dr. Alvarez-Sanders's opinion as "not appear[ing] consistent with the evidence, as previously discussed in paragraph four above [(*i.e.*, the ALJ's listings analysis)[8]], as

---

[8] Although the ALJ does not reference Dr. White's listings assessment in this part of her decision, it appears that she adopted his evaluation, finding, akin to him, that Ms. Speegle did not suffer from any marked limitations in performing activities of daily living, engaging in social functioning, and maintaining concentration, persistence or pace (under paragraph B) or satisfy the requirements of paragraph C. (*Compare* Tr. 24 *with* Tr. 365-66).

10

well as in light of prior and subsequent treatment records." (Tr. 27).

In *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the Eleventh Circuit

explained:

> In assessing the medical evidence in this case, <u>the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor</u>. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam). <u>The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence</u>. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (per curiam).
>
> <u>The ALJ, here, disregarded these rules in assigning weight to the various medical opinions</u>. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. <u>Their opinions were entitled to little weight, however, and could not serve as substantial evidence</u>.

*Sharfarz*, 825 F.2d at 279-80 (emphasis added); *see also Swindle v. Sullivan*, 914

F.2d 222, 226 n.3 (11th Cir. 1990) ("Because Dr. Hibbett did not examine Ms.

Swindle, <u>his opinion is entitled to little weight</u> and taken alone does not constitute

substantial evidence to support an administrative decision." (emphasis added) (citing

*Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985))).[9]

Thus, as *Sharfarz* makes clear, because Dr. White's non-examining opinions about Ms. Speegle's mental functioning conflict with those examining ones of Dr. Alvarez-Sanders, they are entitled to little weight. Additionally, Dr. White's assessment by itself is insufficient to substantially support the ALJ's disability determination.

Further, in assigning little weight to the examining assessment by Dr. Alvarez-Sanders, the ALJ runs afoul of *Sharfarz* for another reason: her explanation for discounting the consultative vocational opinion favorable to Ms. Speegle is murky at best. In particular, the ALJ appears to have adopted Dr. White's functional determinations which are entitled to little weight (*compare* Tr. 365 *with* Tr. 24) and then relies upon that same dubious proof as a means for disputing Dr. Alvarez-Sanders's contrary functional findings that are substantiated by an underlying GAF score of 45.[10] (*See* Tr. 27 ("This opinion, however, does not appear consistent with

_____

[9]  Ms. Speegle cites to the *Swindle* decision in support of her appeal and expressly argues that "a non examining reviewing physician is entitled to little weight especially when it is controverte[d] by other treating and examining medical opinion." (Doc. 9 at 7).

[10]  The court notes that, in one portion of his brief, the Commissioner acknowledges that "GAF scores between 41 and 50 indicate serious symptoms." (Doc. 10 at 7 n.3 (citing *American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. 2000) (DSM-IV))). The Commissioner then

the evidence, as previously discussed in paragraph four . . . .")).

Finally, in the absence of an underlying medical source statement[11] which corroborates the ALJ's mental RFC formulation, it appears that the ALJ has improperly derived the mental vocational abilities and limitations for Ms. Speegle based upon her layman's review and interpretation of the raw medical information that is included in the record.  As the undersigned has previously observed on numerous occasions, "[s]uch an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination."  *See, e.g., Cole-Smith v. Astrue*, No. 2:11-CV-2857-VEH, 2012 WL 1946766, at *5 (N.D. Ala. May 29, 2012) (citing *Rohrberg  v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)

---

questions the evidentiary value of a <u>prior</u> GAF score of 45 for Ms. Speegle dated April 2, 2008, because the test assessor was "only a licensed professional counselor[.]" (Doc. 10 at 7 n.4; *see also* Tr. 276 (reflecting GAF score of 45)). However, when addressing the ALJ's rejection of Dr. Alvarez-Sanders's opinions as proper, the Commissioner neglects to mention Ms. Speegle's <u>second</u> GAF score of 45, which score <u>supports</u> the functional findings contained in the consultative examiner's medical source statement.  (Doc. 10 at 9).

   [11] "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis."  SSR 96-5p, 1996 WL 374183, at *4.  "Medical source statements are to be based on the medical sources' records <u>and examination of the individual</u>; *i.e.*, their personal knowledge of the individual."  *Id.* (emphasis added).  Because Dr. White never examined Ms. Speegle, his opinion does not constitute a medical source statement.

("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.") (internal quotation marks omitted)); *see also Manso-Pizarro v. Secretary of Health and Human Servs*. 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." (emphasis added) (citing *Perez v. Secretary of Health and Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991))); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (emphasis added) (citing *Rodriguez v. Secretary of Health and Human Servs.*, 893 F.2d 401, 403 (1st Cir. 1989))); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Accordingly, for all these reasons, the Commissioner's disability determination is not supported by substantial evidence, and the case is due to be remanded for further development.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the

submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.  Accordingly, the ruling of the Commissioner will be remanded by separate order.

      **DONE** and **ORDERED** this the 25th day of September, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge